UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| S.M. as father and natural guardian of A.M., a minor, and S.K. as father and natural guardian of T.K., a minor, | : : : : | |
| Plaintiffs, | : | CIVIL ACTION - LAW |
| | : | |
| - against - | : | |
| | : | JURY TRIAL DEMANDED |
| TAMAQUA AREA SCHOOL DISTRICT, RAYMOND KINDER, STEVEN TOTH, THOMAS MCCABE, LARRY WITTIG, NICHOLAS BOYLE, MELANIE DILLMAN, THOMAS BARTASAVAGE, BRYAN MILLER, MARK ROTHER, THOMAS ROTTET, DANIEL SCHOENER, and TRINA SCHELLHAMMER, | : : : : : : : : : : : : | No. |
| Defendants. | : | |

## COMPLAINT

Plaintiff S.M., as parent and natural guardian of A.M., a minor, and

S.K., as father and natural guardian of T.K., a minor, by their attorneys

Barry H. Dyller, Esq. and Tara G. Giarratano, Esq. of Dyller & Solomon, for

their Complaint allege as follows:

## JURISDICTION AND VENUE

1.     This action arises out of violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., 42 U.S.C. § 1983 and the common law.

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## THE PARTIES

4.     Plaintiff S.M. is the father of A.M., who is a minor. Plaintiff S.K. is the father of T.K., who is a minor.[1] At all times relevant to the claims herein, A.M. and T.K. were enrolled in Tamaqua Area High School ("Tamaqua Area") and were members of the football team.

---

[1] S.M. and S.K. are referred to by their initials because A.M. and T.K. are minors and the matter described herein is highly sensitive.  S.M. and S.K. are referred to by their initials because publicly identifying them would publicly identify A.M. and T.K.

5.     Defendant Tamaqua Area School District ("Tamaqua Area") is a political subdivision located in Tamaqua, Pennsylvania.

6.     Raymond Kinder is, and at all times relevant hereto was, the Superintendent of Tamaqua Area School District.

7.     Steven Toth is, and at all times relevant hereto was, the Assistant Superintendent of Tamaqua Area School District.

8.     Thomas McCabe is, and at all times relevant hereto was, the principal of Tamaqua Area High School.

9.     Larry Wittig is the president of the Tamaqua Area School Board.

10.    Nicholas Boyle is the vice president of the Tamaqua Area School Board.

11.    Melanie Dillman is a member of the Tamaqua Area School Board.

12.    Thomas Bartasavage is a member of the Tamaqua Area School Board.

13.    Bryan Miller is a member of the Tamaqua Area School Board.

14.    Mark Rother is a member of the Tamaqua Area School Board.

15.    Thomas Rottet is a member of the Tamaqua Area School Board.

16.     Daniel Schoener is a member of the Tamaqua Area School Board.

17.     Trina Schellhammer is a member of the Tamaqua Area School Board.

## FACTS

Relevant Background Information

18.     N.M. is the older brother of A.M.[2]

19.     Across the street from Tamaqua Area is a two-story structure in which football players store their equipment and dress for practices and games.

20.     That building is commonly referred to as the "Football House."

21.     In the Football House, freshman and sophomores are assigned lockers on the lower level, and juniors and seniors are assigned lockers on the upper level.

22.     Tamaqua Area football players are routinely left unsupervised in the Football House.

23.     At all relevant times, Tamaqua Area administrators and employees, including but not limited to football coaches, had actual

---

[2] N.M. and all students referred to herein are identified by initials only.

knowledge that the football players, when left unsupervised in the Football House, behaved in a manner which resulted in their causing physical harm to each other.

The Tamaqua Area "Tradition" of Sexual Assault

24.    Upon information and belief, the Tamaqua Area High School football team maintains a tradition of sexually assaulting certain freshman players by holding them down on the ground, beating them up, and attempting to penetrate their anus with an object.

25.    This tradition of sexual assault is referred to among the Tamaqua football team as "school bus," "pineapple," "Excalibur," or "the Raider[3] special."

26.    When N.M. was a freshman at Tamaqua Area High School, he was sexually assaulted with a broomstick in the above-described manner, as part of the Tamaqua Area football tradition.

---

[3] Tamaqua Area's student athletes are called "Raiders."

The Sexual Assault of A.M.[4]

27.     On Thursday, November 4, 2021, A.M., N.M., and T.K. attended football practice and the customary after practice dinner held in the high school cafeteria.

28.     After the dinner, Tamaqua Area football staff directed freshman football players, including A.M., to carry Gatorade and other items into the unsupervised Football House, where upperclassmen sexual assaulters were waiting to sexually assault them.

29.     A.M. carried Gatorade into the football house. He then went to his locker, located on the lower level, to retrieve his belongings before he went home.

30.     As A.M. sat on the bench in front of his locker, the lights went out and he heard people running down the stairs.

31.     A.M. was shoved off of the bench and held down on the ground. Phone flashlights revealed that the person holding A.M. down was another Tamaqua football player, T.O.

---

[4] While the student sexual assaulters failed to insert an object into A.M.'s anus, their efforts described below constitute a sexual assault.

32.    T.O. tried to turn A.M. over onto his stomach. Though A.M. attempted to resist, T.O. eventually overpowered A.M.

33.    A.M. next saw a second Tamaqua football player, Z.M., approach him while holding a banana. Z.M. then put the banana to A.M.'s anus and attempted to forcefully push it inside. A.M. identified another football player, P.C., standing nearby and holding a second banana.

34.    A.M. fought off T.O. and Z.M. and turned over onto his back. T.O., Z.M., and a third Tamaqua football player, L.K., then repeatedly punched him in the face.

35.    The lights then turned back on, and most of the people in the room ran upstairs.

36.    Z.M. shoved the banana in A.M.'s face, threw it at him, and ran upstairs.

37.    A.M. left the Football House, got into his father's car, and reported the sexual assault.

The Sexual Assault of T.K.

38.     Prior to November 4, 2021, due to an awareness of what can happen in the unsupervised football house, T.K. intentionally did not keep his belongings in his assigned locker.

39.     During the November 4, 2021 team dinner, Tamaqua Area football players stole T.K.'s bag from him and took it to the Football House, in an effort to lure T.K. there.

40.     Soon after A.M. left the Football House, T.K., unaware of the sexual assault of A.M., went to the Football House's lower level to retrieve his bag. When he got there, the lights went out and several Tamaqua Area football players rushed him.

41.     T.K. fell into the lockers and onto the bench in front of the lockers. T.K. identified that T.O., the same student involved in sexually assaulting A.M., was on top of him. T.O. attempted to turn T.K. over onto his stomach to insert an object into his anus. As T.K. resisted, the lights turned on.

Sexual Assault of A.M. is Reported to Tamaqua Area Officials

42.    Immediately after A.M. reported the sexual assault to his father S.M., S.M. contacted Tamaqua Area Athletic Director Mike Hromyak and asked him for Coach Samuel Bonner's cell phone number.

43.    S.M. then contacted Coach Bonner to report the sexual assault of A.M.

44.    S.M. next spoke on the phone with Nick Boyle, Vice President of the Tamaqua Area School Board. S.M. told Boyle about the sexual assault of A.M. Boyle told S.M. he was going to make some calls and then check back in with S.M.

45.    S.M. next received a call from Tom McCabe, Principal of Tamaqua Area High School. S.M. told McCabe about the sexual assault of A.M.

46.    At approximately 8:30 p.m., the Tamaqua Borough Police Department interviewed A.M. on Tamaqua Area School District property. Dr. Steven Toth, Assistant Superintendent of Tamaqua Area School District, was present.

47.    On November 11, 2021, Toth called S.M. and asked if he and McCabe could obtain a written statement from A.M. S.M. provided the written statement A.M. previously provided to police.

Sexual Assault of T.K. is Reported to Tamaqua Area Officials

48.    On November 5, 2021, the day after both he and A.M. were assaulted, T.K. went to the principal's office to speak to Principal McCabe about the sexual assault that happened the day before.

49.    T.K. was told that McCabe was too busy to meet with him.

50.    After school, T.K. and his father S.K. returned to McCabe's office to talk about the November 4, 2021 sexual assault.

51.    McCabe showed T.K. and S.K. the security footage from the cafeteria which showed several Tamaqua Area football players conspiring to steal T.K.'s bag away from him in an effort to lure him to the Football House. T.K. and McCabe were able to identify those students from the security video.

52.    McCabe asked T.K. to provide a written statement. T.K. did so.

53.    T.K. was not offered counseling or supportive measures of any kind.

54.    T.K. and S.K. never heard from Tamaqua Area administrators again.

55.    Upon information and belief, the Tamaqua Area defendants took no action to further investigate the sexual assault of T.K. or to impose discipline on those responsible.

Tamaqua Area Officials Admit A.M.'s Report was Corroborated

56.    On November 5, 2021, McCabe called S.M. and told him Tamaqua Area officials would conduct interviews relating to A.M.'s report. A few hours later, McCabe reported to S.M. that one perpetrator confessed and that officials collected multiple statements implicating at least three Tamaqua students.

Tamaqua Area Officials Engage in a Coverup

57.    On November 9, 2021, Larry Wittig, Tamaqua Area School Board President, gave a public statement at a school board committee meeting, characterizing the sexual assault of A.M. as a "hazing incident," "for lack of a better term."

58.    On November 16, 2021, Tamaqua Area School Board held a disciplinary hearing for one of the students present during the sexual assault of A.M.

59.    S.M. and A.M. attempted to be present for the hearing, as was their right.

60.    Raymond Kinder, Superintendent of Tamaqua Area told S.M. and A.M. they had no right to be present.

61.    Kinder instructed S.M. and A.M. to leave and told them they were prohibited by federal law from knowing the outcome of the hearing.

62.    On November 18, 2021, at 6 p.m., Tamaqua Area School Board held a disciplinary hearing for Z.M., one of A.M.'s sexual assaulters.

63.    S.M. and A.M. attempted to be present for the hearing, as was their right.

64.    Again, Kinder told S.M. and A.M. they had no right to be present. Kinder placed S.M. and A.M. in a separate room away from the hearing.

65.    After some time, Kinder returned to the room and told S.M. and A.M. to leave. S.M. and A.M. objected that A.M. wished to speak to the school board and provide his side of the story after Z.M. was given the opportunity to speak. Kinder told S.M. and A.M. that A.M. would not be permitted to tell what happened to him. Kinder stated that A.M. had no right to know the outcome of Z.M.'s hearing.

66.    On November 18, 2021, at 8 p.m., Tamaqua Area School Board held a disciplinary hearing for T.O., another of A.M.'s sexual assaulters.

67.    S.M. and A.M. attempted to be present for the hearing.

68.    Again, Kinder told S.M. and A.M. they had no right to be present. Kinder again placed S.M. and A.M. in a separate room away from the hearing.

69.    As had happened after Z.M.'s hearing, at the conclusion of T.O.'s hearing Kinder returned to the room and told S.M. and A.M. to leave.

70.    Again, S.M. and A.M. objected that A.M. wished to speak to the school board and tell what happened to him after T.O. was given the opportunity to speak.

71.    Kinder told S.M. and A.M. that A.M. would not be permitted to do so. Kinder reiterated that A.M. had no right to know the outcome of T.O.'s hearing.

72.    Later, S.M. learned that while S.M. and A.M. were cordoned off from the hearings and restricted to a separate room, the Tamaqua Area School Board decided to permit Z.M. and T.O., A.M.'s sexual assaulters, to remain enrolled at Tamaqua Area School District.

73.   S.M. and A.M. were not permitted to have any input into the consequences for A.M.'s sexual assaulters.

74.   S.M. and A.M. were also not advised of A.M.'s Title IX right to be represented by an attorney[5] throughout Tamaqua Area's investigation and decision-making process, based on the fact that defendants permitted A.M.'s sexual assaulters to be represented by attorneys.

75.   On November 22, 2021, A.M. was surprised to see L.K., the third football player who attacked him in school. Toth and McCabe previously told S.M. that L.K. was suspended pending a disciplinary hearing which had not yet taken place.

76.   S.M. soon learned that in addition to not suspending L.K. pending a hearing, as Tamaqua Area officials represented to S.M. they would, Tamaqua Area officials also took no action to separate A.M. from L.K. during the school day. Over S.M.'s objection, L.K. continued to attend classes with A.M.

---

[5] Under Title IX, schools are prohibited from allowing one party to have an attorney while preventing the other party from also having an attorney.

77.    Upon information and belief, the defendants conspired to protect L.K.  because his mother is a teacher in Tamaqua Area School District.

78.    On November 22, 2021, the Tamaqua Area School Board held a special meeting concerning the sexual assaults of A.M. and T.K.

79.    A.M.'s and T.K.'s fathers, S.M. and S.K., attempted to attend. Upon arrival, Kinder removed S.M. and S.K. from the meeting.

80.    Kinder separated S.M. and S.K., placing them each in different classrooms.

81.    Alone with S.M., Kinder called A.M. a liar and stated there was no evidence that any bananas were present during the attack.

82.    Upon information and belief, testimony at one or both of Z.M.'s and T.O.'s hearings provided evidence that bananas were both present and used during the attack.

83.    Kinder next accused S.M. of manufacturing A.M.'s allegations and writing A.M.'s statement for him. Kinder falsely argued that A.M.'s story had repeatedly changed.

84.    On November 23, 2021, S.M. emailed Kinder, copying Toth, Larry Wittig, and Nick Boyle, requesting that Kinder recuse himself from any further involvement with the investigation of the sexual assault of A.M. and any related disciplinary hearings due to the fact that Kinder called A.M. a liar to S.M. and had been withholding information from S.M. throughout the process.

85.    Kinder responded that he would recuse from the investigation but, due to his position as superintendent, would nevertheless remain involved in other aspects of the process.

86.    Also on November 23, 2021, during the school day, Toth called S.M. to ask if he and McCabe could speak to A.M. S.M. told them they could speak to A.M. while S.M. was present via speakerphone. During the meeting, Toth and McCabe asked A.M. to identify who used the banana. A.M. identified Z.M.

Public Statements in Further of Defendants' Cover Up

87.    Defendants conspired to cover up that A.M. was sexually assaulted. In a statement to the press on November 22, 2021, School Board President Wittig stated "there's no sexual connotation to any of the

charges," "there is no sexual assault," "the sexual part of this is not true," and "the rumors are not true."

88.    In reference to concerned community members sounding the alarm that a sexual assault was being covered up at Tamaqua, Wittig also stated to the press "I would suggest the people who perpetrate these social media blasts lawyer up, because if I was them, I'd be all over it."

Defendants' Deliberate Indifference
Leads to Retaliatory Harassment of A.M

89.    As defendants prioritized protecting the sexual assaulters and attacking the credibility of A.M., school became an increasingly hostile environment for A.M. and N.M.

90.    A.M. and N.M. were routinely bullied during school about the sexual assault of A.M. The bullying included statements that both A.M. and N.M. were "probably gay" and that N.M. wanted to watch A.M. be sexually assaulted.

91.    S.M. promptly reported the bullying to Toth and McCabe.

92.    Upon information and belief, neither Toth nor McCabe took any investigatory or disciplinary action following S.M.'s report.

93.    The bullying and retaliatory harassment of A.M. continued and included another Tamaqua Area High School football player using bananas

to taunt A.M. about the sexual assault, including shoving one his face and placing a different one on his lunch tray.

Retaliatory Harassment of A.M. Escalates
into an Attempted Additional Sexual Assault

94.     A.M. was also on the wrestling team. On January 19, 2022, a senior on the wrestling team pinned A.M. down in the wrestling room and yelled to another wrestler to get a banana.

95.     A.M. evaded the attack and reported it to S.M. A.M. also told S.M. that he could not mentally handle attending Tamaqua Area High School anymore.

96.     A.M. withdrew from Tamaqua Area High School on January 27, 2022.

97.     Also on January 27, 2022, S.M. reported the attempted, additional sexual assault to the Tamaqua Area High School wrestling coach and informed him that A.M. was withdrawing from school.

98.     Shortly after A.M.'s withdrawal, the perpetrator of the attempted, additional sexual assault boasted during school hours that McCabe told him he considered the attempted, additional sexual assault only "horseplay."

99.   Upon information and belief, Tamaqua Area School District did not investigate the attempted, additional sexual assault as a sexual assault, instead labeling the assault to be mere "horseplay."

Defendants' Egregious Title IX Violations

100.   Neither S.M., as parent and guardian of A.M., nor S.K., as parent and guardian of T.K., were ever contacted by a Title IX Coordinator from Tamaqua Area School District.

101.   Neither S.M., as parent and guardian of A.M., nor S.K., as parent and guardian of T.K., were ever informed of A.M.'s and T.K.'s rights under Title IX to the following:

- Supportive measures
- Segregation from their assaulters
- To file a formal Title IX Complaint against their assaulters
- Protection from retaliation, including retaliatory harassment
- An equitable and transparent investigation and disciplinary process
- All corrective action necessary to stop further assault and harassment
- Advisors to represent their interests during the investigation and disciplinary process

102.   As a direct result of defendants' dereliction of their duties under Title IX, A.M. suffered retaliatory harassment so severe and pervasive that it escalated into a second attempted sexual assault and forced A.M. to withdraw from school.

103.   Upon information and belief, even after receiving reports of three separate incidents of attempted or completed sexual assaults in its athletic programs, Tamaqua Area officials took no action to properly investigate or institute corrective action designed to prevent future assaults. To the contrary, Tamaqua Area officials conspired to hide the truth, referring to the incidents as "hazing" and "horseplay," protecting the assaulters, and either ignoring or attacking the victims.

104.   The actions and inactions of defendants are in violation of clearly established law and leave the rest of Tamaqua Area High School's student-athlete community susceptible to further sexual abuse.

<u>COUNT ONE</u>
**Deliberate Indifference to**
**Report of Sexual Assault/Harassment**
in Violation of Title IX, 20 U.S.C. § 1681, *et seq.*
(S.M. for A.M. v. Tamaqua Area School District)

105.   Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

106.   Sexual assault is sex discrimination prohibited by Title IX. The sexual assault of A.M. was severe, pervasive, objectively offensive, and created a hostile educational environment for him based on his sex.

107.   Defendants had actual knowledge of the sexual assault of A.M.

108.   Tamaqua Area School District employees, administrators, and agents, including but not limited to the individual defendants, had the authority and ability to promptly investigate following the sexual assault of A.M. and to take meaningful corrective action to remedy the hostile educational environment he suffered.

109.   Defendants were deliberately indifferent to A.M.'s rights under Title IX, as exhibited by the following non-exhaustive examples:

a. Upon information and belief, none of the Tamaqua Area School District employees, administrators, and agents (including but not limited to the individual defendants) who had actual knowledge of the sexual assault of A.M. reported the assault to Tamaqua Area School District's Title IX Coordinator.

b. The Title IX Coordinator never contacted A.M.'s father, S.M. No one from Tamaqua Area School District informed S.M. of A.M.'s rights under Title IX, including but not limited to supportive measures.

c. Tamaqua Area School District, through its employees, administrators, and agents (including but not limited to the individual defendants) refused to acknowledge that the assault of A.M. was sexual in nature and refused to investigate the assault as a sexual assault.

d. No one from Tamaqua Area School District ever made a Childline report,[6] despite knowing that the assault was sexual in nature.

_____

[6] Under the Pennsylvania Child Protective Services Law, 23 Pa.C.S.A. § 6319, the Tamaqua Area School District agents' failures to report the

e. Characterizing the sexual assault of A.M. as "horseplay" and "hazing."

f. creating a hostile educational environment that tolerated male-on-male sexual assault and harassment.

g. Refusing to institute the necessary corrective action to remedy the hostile educational environment A.M. faced and to ensure his continued enrollment at school.

h. Failing to provide adequate training for Tamaqua Area's administrators, employees, or other school officials on sexual harassment and assault, retaliation, and mandatory reporting.

110.   The actions and inactions of defendants, including but not limited to those detailed above, created a hostile educational environment in which the sexual assault of A.M. was consciously tolerated and were clearly unreasonable in light of the known circumstances.

111.   Through its actions and inactions, Tamaqua Area School District created a climate in which sexual assault perpetrated under the guise of "hazing" or "horseplay" is tolerated.

---

sexual assault of A.M. constituted misdemeanors of the second degree, punishable by up to two years in prison.

112.  As a result of the defendants' deliberate indifference following the sexual assault of A.M., A.M. suffered damage, including but not limited to being effectively barred from accessing his education.

COUNT TWO
**Deliberate Indifference to**
**Report of Sexual Assault/Harassment**
in Violation of Title IX, 20 U.S.C. § 1681, *et seq.*
(S.K. for T.K. v. Tamaqua Area School District)

113.  Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

114.  Sexual assault is sex discrimination prohibited by Title IX. The attempted sexual assault of T.K. was severe, pervasive, objectively offensive, and created a hostile educational environment for him based on his sex.

115.  Defendants had actual knowledge of the attempted sexual assault of T.K.

116.  Tamaqua Area School District employees, administrators, and agents, including but not limited to the individual defendants, had the authority and ability to promptly investigate following the attempted sexual assault of T.K. and to take meaningful corrective action to remedy the hostile educational environment he suffered.

117.   Defendants were deliberately indifferent to T.K.'s rights under

Title IX, as exhibited by the following non-exhaustive examples:

a. Upon information and belief, none of the Tamaqua Area
School District employees, administrators, and agents
(including but not limited to the individual defendants) who had
actual knowledge of the attempted sexual assault of T.K.
reported the assault to Tamaqua Area School District's Title IX
Coordinator.

b. The Title IX Coordinator never contacted T.K.'s parents. No
one from Tamaqua Area School District informed S.K. of T.K.'s
rights under Title IX, including but not limited to supportive
measures.

c. Tamaqua Area School District, through its employees,
administrators, and agents (including but not limited to the
individual defendants) never acknowledged that the assault of
T.K. was sexual in nature or investigated the assault as an
attempted sexual assault.

d. No one from Tamaqua Area School District ever made a
Childline report,[7] despite knowing that the assault was sexual
in nature.

e. Characterizing the sexual assault of T.K. as "horseplay" and
"hazing."

f. creating a hostile educational environment that tolerated
male-on-male sexual assault and harassment.

_____

[7] Under the Pennsylvania Child Protective Services Law, 23 Pa.C.S.A. §
6319, the Tamaqua Area School District agents' failures to report the
attempted sexual assault of T.K. constituted misdemeanors of the second
degree, punishable by up to two years in prison.

g. Refusing to institute the necessary corrective action to remedy the hostile educational environment T.K. faced and to ensure he received equal access to his education following the assault.

h. Failing to provide adequate training for Tamaqua Area's administrators, employees, or other school officials on sexual harassment and assault, retaliation, and mandatory reporting.

118. The actions and inactions of defendants, including but not limited to those detailed above, created a hostile educational environment in which the attempted sexual assault of T.K. was consciously tolerated and were clearly unreasonable in light of the known circumstances.

119. As a result of the defendants' deliberate indifference following the sexual assault of T.K., T.K. suffered damage, including but not limited to being denied equal access to his education.

COUNT THREE
**Retaliation Following
Report of Sexual Assault**
in Violation of Title IX, 20 U.S.C. § 1681, *et seq.*
(S.M. for A.M. v. Tamaqua Area School District)

120. Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

121. S.M. repeatedly reported the sexual assault of A.M. to the individual defendants, despite multiple Tamaqua Area School District

agents and employees already possessing actual knowledge of the sexual assault.

122.   Instead of reacting as required by Title IX, defendants retaliated against A.M. by, among other things:

a. Attempting to discredit him and calling him a liar.

b. Refusing to properly investigate the sexual assault of A.M.

c. Refusing to institute necessary corrective action to remedy the hostile educational environment A.M. faced and to ensure his continued enrollment at school.

d. Making a condition of A.M.'s education that he suffer a hostile educational environment in which the first sexual assault was tolerated, thereby enabling the second, attempted sexual assault.

123.   As a result of defendants' retaliatory conduct, A.M. suffered damage, including but not limited to being effectively barred from accessing his education.

<u>COUNT FOUR</u>
**Deliberate Indifference to Reports**
**of Retaliatory Harassment**
in Violation of Title IX, 20 U.S.C. § 1681, et seq.
(S.M. for A.M. v. Tamaqua Area School District)

124.   Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

125.   A non-hostile educational environment is one in which a student who reports sexual assault is free from retaliatory harassment.

126.   Defendants had actual knowledge that A.M. was being harassed in retaliation for his report of the sexual assault he suffered.

127.   The retaliatory harassment A.M. suffered was sex discrimination prohibited by Title IX.

128.   The retaliatory harassment A.M. suffered was so severe, pervasive, and objectively offensive that it denied him equal access to educational opportunities or benefits provided by Tamaqua Area School District.

129.   Allowing a victim of sexual assault to be subject to retaliatory harassment and refusing to investigate or take corrective action is sex discrimination prohibited by Title IX.

130.   Defendants were deliberately indifferent to A.M.'s right to a non-hostile educational environment and refused to take corrective action despite having actual knowledge that A.M. was being harassed.

131.   This action subjected A.M. to a hostile educational environment and was clearly unreasonable in light of the known circumstances.

132.   As a result of defendants' deliberate indifference, A.M. suffered damage, including but not limited to a denial of equal access to his education.

COUNT FIVE

**Deliberate Indifference to Reports of Retaliatory
Harassment Resulting in Second, Attempted Sexual Assault**
in Violation of Title IX, 20 U.S.C. § 1681, et seq.
(S.M. for A.M. v. Tamaqua Area School District)

133.  Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

134.  As a result of defendants' deliberate indifference to the retaliatory harassment of A.M., A.M. was subject to a second, attempted sexual assault.

135.  The second, attempted sexual assault was a form of sexual harassment so severe, pervasive, and objectively offensive that it denied A.M. equal access to educational opportunities or benefits provided by Tamaqua Area and resulted in him being effectively barred from accessing his education.

136.  Defendants' actions and inactions subjected A.M. to a hostile educational environment and were clearly unreasonable.

137.  As a result of defendants' deliberate indifference, A.M. suffered damage, including but not limited to a denial of equal access to his education which culminated in A.M. being effectively barred from accessing his education.

<u>COUNT SIX</u>
**Deliberate Indifference to Right to Unbiased Treatment**
in Violation of Title IX, 20 U.S.C. § 1681, et seq.
(S.M. for A.M. v. Tamaqua Area School District)

138.  Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

139.  By treating A.M. differently from his sexual assaulters throughout Tamaqua Area's investigative and disciplinary process, Tamaqua Area School District was deliberately indifferent to A.M.'s Title IX right to unbiased treatment.

140.  Tamaqua Area School District treated A.M. differently from his sexual assaulters by, among other things:

a. Allowing A.M.'s sexual assaulters the right to be heard at investigative and/or disciplinary proceedings or hearings, while denying A.M. the same right to be heard.

b. Allowing A.M.'s sexual assaulters to be present for investigative and/or disciplinary proceedings or hearings, while denying A.M. the same right to be present.

c. Allowing A.M.'s sexual assaulters to be represented by counsel at investigative and/or disciplinary proceedings or hearings, while denying A.M. the same right to be represented by counsel.

d. Labelling A.M. as a "liar" while refraining from so discrediting A.M.'s sexual assaulters.

141.   Tamaqua Area School District's actions subjected A.M. to a hostile educational environment and were clearly unreasonable in light of the known circumstances.

142.   Through its actions and inactions, Tamaqua Area School District created a climate in which sexual assault perpetrated under the guise of "hazing" or "horseplay" is tolerated.

143.   As a result of Tamaqua Area School District's deliberate indifference, A.M. suffered damage, including but not limited to being effectively barred from accessing his education.

<u>COUNT SEVEN</u>
**Deliberate Indifference to Right to Unbiased Treatment**
in Violation of Title IX, 20 U.S.C. § 1681, et seq.
(S.K. for T.K. v. Tamaqua Area School District)

144.   Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

145.   By treating T.K. differently from his sexual assaulters throughout Tamaqua Area's investigative process, Tamaqua Area School District was deliberately indifferent to T.K.'s Title IX right to unbiased treatment.

146.   Tamaqua Area School District treated T.K. differently from his sexual assaulters by, among other things:

a. Allowing T.K.'s sexual assaulters the right to be heard at investigative and/or disciplinary proceedings or hearings, while denying T.K. the same right to be heard.

b. Allowing T.K.'s sexual assaulters to be present for investigative and/or disciplinary proceedings or hearings, while denying T.K. the same right to be present.

c. Allowing T.K.'s sexual assaulters to be represented by counsel at investigative and/or disciplinary proceedings or hearings, while denying T.K. the same right to be represented by counsel.

147.   Tamaqua Area School District's actions subjected T.K. to a hostile educational environment and were clearly unreasonable in light of the known circumstances.

148.   Through its actions and inactions, Tamaqua Area School District created a climate in which sexual assault perpetrated under the guise of "hazing" or "horseplay" is tolerated.

149.   As a result of Tamaqua Area School District's deliberate indifference, T.K. suffered damage, including but not limited to a denial of equal access to his education.

COUNT EIGHT
**Equal Protection**
in violation of 42 U.S.C. §1983
(S.M. for A.M. v. Individual Defendants)

150.   Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

151.   Upon information and belief, if a female student reported that other students attempted to insert an object into her body, the defendants would not consider it hazing or horseplay, and would appropriately investigate and take actions to protect the female victim from further assaults or retaliation.

152.   Under the Fourteenth Amendment to the U.S. Constitution, A.M. had the right as a public school student to equal protection of the laws and the right to equal access to an educational environment free from harassment and discrimination on the basis of sex.

153.   The individual defendants were at all relevant times state actors acting under color of state law.

154.   Under the Equal Protection Clause of the Fourteenth Amendment, individual defendants Kinder, Toth, and McCabe were obligated to address known student-on-student sexual harassment and/or

sexual assault in the same manner regardless of whether the victim was male or female.

155.   Kinder, Toth, and McCabe intentionally shared their power to investigate and/or address the sexual assault of A.M. with other individual defendants Wittig, Boyle, Dillman, Bartasavage, Miller, Rother, Rottet, Schoener, and Schellhammer.

156.   The individual defendants had actual knowledge that A.M. experienced sexual assault and harassment at Tamaqua Area High School.

157.   The individual defendants also had actual knowledge that A.M. was not the only male student subjected to sexual assault and harassment by other male students, based on S.K.'s and T.K.'s reports of the attempted sexual assault of T.K.

158.   Through their actions and inactions, the individual defendants created a climate in which male-on-male sexual assault perpetrated under the guise of "hazing" or "horseplay" is tolerated.

159.   The individual defendants violated A.M.s right to equal protection of the laws on the basis of his sex by acting with deliberate indifference to both his reports of sexual assault and harassment and to the

hostile educational environment he continued to suffer as the result of their failure to take meaningful corrective action.

160.  As the result of the individual defendants' violation of A.M.'s equal protection rights under the Fourteenth Amendment, A.M. suffered damage, including but not limited to being effectively barred from accessing his education.

COUNT NINE
**Equal Protection**
in violation of 42 U.S.C. §1983
(S.K. for T.K. v. Individual Defendants)

161.  Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

162.  Upon information and belief, if a female student reported that other students attempted to insert an object into her body, the defendants would not consider it hazing or horseplay, and would appropriately investigate and take actions to protect the female victim from further assaults or retaliation.

163.  Under the Fourteenth Amendment to the U.S. Constitution, T.K. had the right as a public school student to equal protection of the laws and the right to equal access to an educational environment free from harassment and discrimination on the basis of sex.

164.   The individual defendants were at all relevant times state actors acting under color of state law.

165.   Under the Equal Protection Clause of the Fourteenth Amendment, individual defendants Kinder, Toth, and McCabe were obligated to address known student-on-student sexual harassment and/or sexual assault in the same manner regardless of whether the victim was male or female.

166.   Kinder, Toth, and McCabe intentionally shared their power to investigate and/or address the sexual assault of A.M. with other individual defendants Wittig, Boyle, Dillman, Bartasavage, Miller, Rother, Rottet, Schoener, and Schellhammer.

167.   The individual defendants had actual knowledge that T.K. experienced sexual assault and harassment at Tamaqua Area High School.

168.   The individual defendants also had actual knowledge that T.K. was not the only male student subjected to sexual assault and harassment by other male students, based on S.M.'s and A.M.'s reports of the sexual assault of A.M.

169.   Through their actions and inactions, the individual defendants created a climate in which male-on-male sexual assault perpetrated under the guise of "hazing" or "horseplay" is tolerated.

170.   The individual defendants violated T.K.'s right to equal protection of the laws on the basis of his sex by acting with deliberate indifference to both his reports of sexual assault and harassment and to the hostile educational environment he continued to suffer as the result of their failure to take meaningful corrective action.

171.   As the result of the individual defendants' violation of T.K.'s equal protection rights under the Fourteenth Amendment, T.K. suffered damage, including but not limited to being effectively barred from accessing his education.

<u>COUNT TEN</u>
**Equal Protection**
in violation of 42 U.S.C. §1983
(S.M. for A.M. v. Tamaqua Area School District)

172.   Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

173.   At all relevant times, Tamaqua Area School District had unconstitutional customs or policies of, among other things:

a. failing to appropriately recognize, investigate and respond to reports of male-on-male sexual assault and harassment;

b. failing to enforce any already existing policies prohibiting sexual assault and harassment when both the perpetrator and the victim are male;

and

c. failing to adequately train school administrators and employees on how to recognize, investigate, address, and prevent further sexual assault and harassment of its students.

174.  Tamaqua Area School District followed these unconstitutional customs and policies not only with regard to A.M., but also with regard to T.K., and, upon information and belief, with regard to other male students.

175.  Kinder was at all relevant times the highest policymaker for Tamaqua Area School District.

176.  The other individual defendants were at all relevant times individuals with the authority to create and enforce Tamaqua Area School District's policies and customs.

177.  At all relevant times, the individual defendants acted with deliberate indifference to the male-on-male sexual assault and retaliatory sexual harassment which A.M. suffered and reported.

178.  Tamaqua Area School District is directly responsible for the unequal protection and treatment of A.M. because it was conducted and

condoned by, its highest policymaker, Kinder, and by individuals with the authority to create and enforce district policies, the individual defendants, thus constituting Tamaqua Area School District policy.

179.  Tamaqua Area School District's unconstitutional policies and customs constituted disparate treatment of A.M.

180.  The policies and customs of Tamaqua Area School District and the individual defendants were so clearly inadequate that they give rise to a reasonable inference that the defendants consciously acquiesced in the harassment and bullying.

181.  The defendants' choices not to adequately train regarding sexual assault and harassment and not to respond appropriately to reports of male-on-male sexual assault and harassment caused A.M. to be subject to retaliatory harassment which culminated in a second sexual assault.

182.  Tamaqua Area's policies and customs violated the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution.

183.  As a result of Tamaqua Area's unconstitutional policies and customs, A.M. suffered damage.

COUNT ELEVEN
**Equal Protection**
in violation of 42 U.S.C. §1983, *et seq.*
(S.K. for T.K. v. Tamaqua Area School District)

184.  Plaintiffs repeat and reallege each and every allegation made

above as if fully repeated herein.

185.  At all relevant times, Tamaqua Area School District had

unconstitutional customs or policies of, among other things:

> a. failing to appropriately recognize, investigate and respond to reports of male-on-male sexual assault and harassment;
>
> b. failing to enforce any already existing policies prohibiting sexual assault and harassment when both the perpetrator and the victim are male;
>
> and
>
> c. failing to adequately train school administrators and employees on how to recognize, investigate, address, and prevent further sexual assault and harassment of its students.

186.  Tamaqua Area School District followed these unconstitutional

customs and policies not only with regard to T.K., but also with regard to

A.M., and, upon information and belief, with regard to other male students.

187.  Kinder was at all relevant times the highest policymaker for

Tamaqua Area School District.

188.  The other individual defendants were at all relevant times individuals with the authority to create and enforce Tamaqua Area School District's policies and customs.

189.  At all relevant times, the individual defendants acted with deliberate indifference to the male-on-male sexual assault and harassment which T.K. suffered and reported.

190.  Tamaqua Area School District is directly responsible for the unequal protection and treatment of T.K. because it was conducted and condoned by, its highest policymaker, Kinder, and by individuals with the authority to create and enforce district policies, the individual defendants, thus constituting Tamaqua Area School District policy.

191.  Tamaqua Area School District's unconstitutional policies and customs constituted disparate treatment of T.K.

192.  The policies and customs of Tamaqua Area School District and the individual defendants were so clearly inadequate that they give rise to a reasonable inference that the defendants consciously acquiesced in the harassment and bullying.

193.  Tamaqua Area's policies and customs violated the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution.

194.  As a result of Tamaqua Area's unconstitutional policies and customs, A.M. suffered damage.

COUNT TWELVE
**Negligence: the First Sexual Assault**
(S.M. for A.M. v. Tamaqua Area School District)

195.  Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

196.  Tamaqua Area School District had a duty of care to protect A.M. from harm.

197.  Tamaqua Area School District breached that duty by failing to properly supervise within its football program, specifically not supervising players in the Football House.

198.  Upon information and belief, Tamaqua Area School District had actual knowledge that when unsupervised, Tamaqua Area High School football players have behaved in a manner which caused physical and sexual harm to each other.

199.  Upon information and belief, Tamaqua Area School District had actual knowledge of the Tamaqua Area tradition of sexual assault.

200.  Tamaqua  Area School District's breach factually and proximately caused the sexual assault of A.M.

201.  As the result of Tamaqua Area School District's breach of its duty of care, A.M. suffered damage.

<u>COUNT THIRTEEN</u>
**Negligence: the Second Sexual Assault**
(S.M. for A.M. v. Tamaqua Area School District)

202.  Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

203.  Tamaqua Area School District had a duty of care to protect A.M. from harm.

204.  Tamaqua Area School District breached that duty by failing to properly supervise within its wrestling program, specifically not supervising wrestlers in the wrestling room.

205.  Upon information and belief, Tamaqua Area School District had actual knowledge that when unsupervised, Tamaqua Area High School student athletes have behaved in a manner which caused physical and sexual harm to each other.

206.  Upon information and belief, Tamaqua Area School District had actual knowledge of the Tamaqua Area tradition of sexual assault.

207.  Tamaqua Area School District's breach factually and proximately caused the sexual assault of A.M.

208.  As the result of Tamaqua Area School District's breach of its duty of care, A.M. suffered damage.

COUNT FOURTEEN
**Negligence**
(S.K. for T.K. v. Tamaqua Area School District)

209.  Plaintiffs repeat and reallege each and every allegation made above as if fully repeated herein.

210.  Tamaqua Area School District had a duty of care to protect T.K. from harm.

211.  Tamaqua Area School District breached that duty by failing to properly supervise within its football program, specifically not supervising players in the Football House.

212.  Upon information and belief, Tamaqua Area School District had actual knowledge that when unsupervised, Tamaqua Area High School football players have behaved in a manner which caused physical and sexual harm to each other.

213.   Upon information and belief, Tamaqua Area School District had actual knowledge of the Tamaqua Area tradition of sexual assault.

214.   Tamaqua Area School District's breach factually and proximately caused the sexual assault of T.K.

215.   As the result of Tamaqua Area School District's breach of its duty of care, T.K. suffered damage.

WHEREFORE, plaintiffs demand judgment as follows:

A.   For plaintiff S.M. for A.M., an amount to be determined at trial, including punitive damages (except as to Tamaqua Area) and interest;

B.   For plaintiff S.K. for T.K., an amount to be determined at trial, including punitive damages (except as to Tamaqua Area) and interest;

C.   For costs and disbursements incurred in this action;

D.   For attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.   Any such other relief as the Court may deem just and proper.

Respectfully submitted,

DYLLER & SOLOMON

s/ Barry H. Dyller, Esq.
s/ Tara G. Giarratano, Esq.
Attorneys for Plaintiffs
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860

Jury Demand

Plaintiffs demand a trial by jury on all issues.