# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

S.M., as father and natural
guardian of A.M., a minor, et al.,

      Plaintiffs,

      v.

TAMAQUA AREA SCHOOL
DISTRICT, et al.,

      Defendants.

CIVIL ACTION NO. 3:22-cv-00525

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This federal civil rights action for damages commenced when the plaintiffs, S.M. and S.K., as fathers and natural guardians of minors A.M. and T.K., respectively, filed their complaint on April 11, 2022.  (Doc.1.) The complaint named as defendants the Tamaqua Area School District (the "District"); the District's employees: Raymond Kinder, Superintendent, Steven Toth, Assistant Superintendent, and Thomas McCabe, principal of the high school; and school board members: Larry Wittig, president, Nicholas Boyle, vice-president, Melanie Dillman, member, Thomas Bartasavage, member, Bryan Miller, member, Mark Rother, member, Thomas Rottet, member, Daniel Schoener, member, and Trina Schellhammer, member (collectively the "individual

defendants").

This matter is before the court on the defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 23.) The motion is fully briefed and ripe for decision.  (Doc. 24; Doc. 30; Doc. 31.)

For the reasons set forth herein, we will deny the motion.

## I.   FACTUAL ALLEGATIONS[1]

This action arises out of the alleged sexual assaults of A.M. and T.K., both of whom were enrolled in the District's high school as freshmen and were members of the football team.  A.M. was also a member of the wrestling team.  The alleged sexual assaults took place in the Football House, which is routinely left unsupervised, and which is a location known to the District's administrators, employees, and football coaches as one where the football players have caused physical harm to each other. Also, the plaintiffs allege that the football team maintains a tradition of sexually assaulting certain freshman players by holding them to the ground, beating them up, and attempting to penetrate their

---

[1]      The facts are taken from the plaintiffs' complaint.

anus with an object.  The tradition has been referred to as "school bus," "pineapple," "Excalibur," or "the Raider special."

On November 4, 2021, A.M. and T.K. attended football practice and the customary after-practice dinner, which was held in the high school cafeteria.[2]  After dinner, the football staff directed freshmen football players, including A.M., to carry Gatorade and other items into the unsupervised Football House, where upperclassmen were waiting to sexually assault them.  After carrying the Gatorade into the Football House, A.M. went to his locker on the lower level to retrieve his belongings.  As he sat on the bench in front of his locker, the lights went out and he heard people running down the stairs.  He was shoved off the bench and held to the floor.  Phone flashlights revealed that T.O., another football player, held A.M. to the ground and attempted to turn A.M. over onto his stomach while another football player, Z.M., approached him holding a banana and attempting to force it into A.M.'s anus.  Another football player, P.C., was standing nearby holding a second banana. While A.M. was able to turn over onto his back, T.O., Z.M., and L.K., a

---

[2]     Non-party, N.M., also attended practice and dinner that evening.  When N.M. was a freshman, he was sexually assaulted with a broomstick as part of the football tradition.

third football player, punched A.M. repeatedly in the face. When the lights were turned on, Z.M. shoved the banana in A.M.'s face, threw it at him, and ran upstairs. A.M. left the Football House, got into his father's car, and reported the assault.

Having been aware of what traditionally happened in the Football House, T.K. intentionally did not keep his belongings in his assigned locker in the Football House. During the team dinner on November 4, 2021, football players stole T.K.'s bag from him and took it to the Football House, to lure him there. After A.M. left the Football House, and unaware of A.M.'s sexual assault, T.K. went to the Football House to retrieve his bag. When he arrived there, the lights went out and several football players rushed him. T.K. fell into the lockers and onto the bench in front of the lockers. At that time, T.O. attempted to turn over T.K. onto his stomach to insert an object into his anus. As T.K. resisted, the lights turned on.

Plaintiff S.M. immediately contacted the District's athletic director, Mike Hromyak, and requested and received the cell phone number of Coach Samuel Bonner. S.M. reported the assault to Coach Bonner. S.M. then called defendant Boyle and informed him of the assault. Shortly

thereafter, defendant McCabe called S.M., who informed McCabe about the assault. At 8:30 p.m., A.M. was interviewed by the Tamaqua Borough Police Department in the presence of defendant Toth. One week later, Toth contacted S.M. and asked if he and McCabe could obtain a written statement from A.M. S.M. provided the written statement which A.M. had given to the police.

On November 5, 2021, T.K. went to the principal's office to speak with defendant McCabe about the previous day's sexual assault. After being told that McCabe was too busy to speak with him, later that day T.K. and his father, S.K., returned to McCabe's office to talk about the incident. McCabe showed them security footage from the cafeteria where T.K.'s bag was taken from T.K., and T.K. and McCabe were able to identify students from the security video. Upon McCabe's request, T.K. provided a written statement. T.K. was not offered counselling. The defendants took no action to further investigate T.K.'s assault, to impose discipline upon the appropriate parties, or to reach out to T.K. and S.K.

The complaint further alleges that A.M. was routinely bullied during school about the sexual assault. S.M. promptly reported the bullying to defendants Toth and McCabe, neither of whom took any

investigatory or disciplinary action following S.M.'s report.  The bullying continued and resulted in a *second* attempted sexual assault while A.M. was a member of the wrestling team.  In this instance, a senior on the wrestling team pinned A.M. and yelled to another wrestler to get a banana.  A.M. evaded the attack.  He eventually withdrew from the District on January 27, 2022.

The complaint consists of fourteen counts.  Counts One (violation of Title IX), Three (retaliation under Title IX), Four (retaliation under Title IX), Five (violation of Title IX – second attempted assault), Six (violation of Title IX), Eight (Equal Protection under § 1983), Ten (Equal Protection under § 1983), Twelve (negligence), and Thirteen (negligence – second assault) relate to S.M. for A.M.  Counts Two (violation of Title IX), Seven (violation of Title IX), Nine (Equal Protection under § 1983), Eleven (Equal Protection under § 1983), and Fourteen (negligence) relate to S.K. for T.K.

## II.  LEGAL STANDARD

Rule 12 (b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief is granted." Fed. R. Civ. P. 12(b)(6).  "Under Rule 12(b)(6), a motion

to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).  Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32-33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.,* 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005).  In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

## III.   DISCUSSION

The plaintiffs brought this federal civil rights action under 42

U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but

instead provides remedies for rights established elsewhere. *City of*

*Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim,

the plaintiff must establish that the defendant, acting under color of state

law, deprived the plaintiff of a right secured by the United States

Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.

1995). To avoid dismissal for failure to state a claim, a civil rights

complaint must state the conduct, time, place, and persons responsible

for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347,

353 (3d Cir. 2005).

## A. Equal Protection Claim

The defendants contend that Counts Eight through Eleven do not set forth claims under 42 U.S.C. § 1983 for violations of the plaintiffs' Equal Protection rights under the Fourteenth Amendment. "A plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest." *Young v. Sewickley Twp.*, 160 Fed. App'x 263, 266 (3d Cir. 2005). The defendants assert that the plaintiffs have failed to allege specific facts that a female student was sexually assaulted by another student and that the defendants responded in a reasonable manner. (Doc. 24, at 11.) Here, the plaintiffs do not allege that they are members of a protected group or class of citizens. Rather, the plaintiffs argue that their complaint alleges claims for both intentional discrimination and hostile educational environment equal protection. (Doc. 30, at 14.) In their reply brief, the defendants argue that the complaint fails to allege identified policies, customs, and practices, and that the sexual assaults were isolated

incidents "at most."  (Doc. 31, at 4.)

### 1. Intentional discrimination equal protection claim

"[F]or the purposes of an Equal Protection claim, showing 'deliberate indifference' to harassment by a school or 'any third party under its control' is sufficient to demonstrate intentional discrimination." *Goodwin v. Pennridge Sch. Dist.*, 309 F. Supp. 3d 367, 378 (E.D. Pa. 2018) ([The plaintiff] "was not required to reference a similarly-situated male, because she alleged the harassment was sexual in nature.")  As we explain below in our discussion of the Title IX claim, where the plaintiffs have sufficiently alleged deliberate indifference, the plaintiffs have sufficiently alleged an intentional equal protection claim.

### 2. Hostile environment equal protection claim

To state a claim for hostile educational environment in violation of the Equal Protection Clause, a plaintiff must allege the same elements required for Title IX liability, except he also "must show that the harassment was the result of municipal custom, policy, or practice." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257-58 (2009).  Here, as discussed below, the plaintiffs have pled the elements of a Title IX claim and that the District maintained customs or policies of failing to

recognize, investigate, and respond to reports of male-on-male sexual assault and harassment; failing to enforce its existing policies prohibiting sexual assault; and failing to adequately train school administrators and employees on how to recognize, investigate, address, and prevent further sexual assault and harassment of its students. (Doc. 1 ¶¶ 173(a-c), 185(a-c).) We find that the plaintiffs have adequately pled a hostile educational environment equal protection claim.

Accordingly, we will deny the District's motion to dismiss the Section 1983 claims against it.

## B. Municipal Liability

The District asserts that Counts Ten and Eleven of the complaint should be dismissed because the plaintiffs have failed to plead any specific facts of any practice or policies and there is no underlying violation of plaintiffs' constitutional rights. (Doc. 24, at 10-11.)

The complaint asserts § 1983 claims against the District. "On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court

of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. A school district may be liable under *Monell*. *McGreevy v. Stroup*, 413 F.3d 359, 367-69 (3d Cir. 2005).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [school district] itself, and show a causal link between

execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

The complaint in this case identifies the District's three unconstitutional customs or policies as follows:

> a. Failing to appropriately recognize, investigate and respond to reports of male-on-male sexual assault and harassment;
>
> b. Failing to enforce any already existing policies prohibiting sexual assault and harassment when both the perpetrator and the victim are male; and
>
> c. Failing to adequately train school administrators and employees on how to recognize, investigate, address, and prevent further sexual assault and harassment of its students.

(Doc. 1 ¶¶ 173(a-c); 185(a-c).)

The District argues that the complaint fails to allege specific facts of any practice or policies, and because there is no underlying violation of the plaintiffs' constitutional rights, the Section 1983 claims must be dismissed. We find that the plaintiffs' allegations recited above are sufficient to state a municipal liability claim against the District.

Accordingly, we will deny the District's motion to dismiss the Section 1983 claims against it.

## C. Individual Defendants

The defendants move to dismiss the claims against the individual defendants set forth in Counts Eight and Nine of the complaint because they contend that the plaintiffs failed to allege any personal involvement whatsoever by the individual defendants. The plaintiffs argue that the complaint extensively alleged personal involvement of each of the individual defendants.

It is well established that "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Here, the complaint alleges that as Superintendent, Kinder told

S.M. and A.M. that they had no right to be present at the first disciplinary hearing on November 16, 2021, before the school board, and they were prohibited from knowing the outcome of the hearing. (Doc. 1 ¶¶ 6, 58-61.) Kinder also excluded them from attending and participating in two disciplinary hearings on November 18, 2021, and a special meeting of the school board. (*Id*. ¶¶ 62-64, 66-68, 78-79.) Kinder also told A.M. that he had no right to know the outcome of the hearings. (*Id*. ¶ 71.) Kinder accused A.M. of lying. (*Id*. ¶ 83.)

Assistant Superintendent Toth and high school principal McCabe received actual notice of the sexual assaults of A.M. and T.K. (*Id*. ¶¶ 46-52, 98.) Despite having an obligation to contact the District's Title IX coordinator and Toth and McCabe having actual notice of the assaults, neither A.M. nor T.K. were ever contacted by the Title IX coordinator. (*Id*. ¶ 101.) The inaction of Toth and McCabe resulted in A.M.'s continued bullying, which resulted in the second sexual assault upon him. (*Id*. ¶¶ 93-94.)

Regarding the individual school board defendants, the complaint alleges that "Kinder, Toth, and McCabe intentionally shared their power to investigate and/or address the sexual assault of A.M. with" the

individual school board defendants. (*Id.* ¶ 155.) The complaint further alleges that the school board defendants presided over three disciplinary hearings and one special meeting. (*Id.* ¶¶ 58, 62, 66, 78.) During each hearing and the special meeting, the school board individual defendants physically excluded the plaintiffs from being present, while permitting the alleged assaulters to be present (*Id.* ¶¶ 58-71, 78-79); provided the alleged assaulters with an opportunity to speak on their own behalf and denied that opportunity to the plaintiffs (*Id.* ¶¶ 65-66, 70-71); provided the alleged assaulters with the opportunity to be represented by counsel and denied that opportunity to the plaintiffs (*Id.* ¶ 74); and denied A.M. his Title IX right to be informed of the outcome of the hearings, including the sanctions imposed. (*Id.* ¶¶ 61, 65, 71.)

We find these allegations sufficient to defeat the motion to dismiss at the pleadings stage. Thus, accepting the plaintiffs' factual allegations in the complaint as true, as we must, we find that the complaint adequately alleges sufficient allegations of personal involvement by the individual defendants.

Accordingly, the defendants' motion to dismiss on the basis that the complaint lacks sufficient factual allegations of personal involvement will

be denied.

### D. Title IX Claims

The defendants argue that the plaintiffs failed to plead valid Title

IX claims. Title IX of the Education Act provides, with certain exceptions,

that "[n]o person in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of, or be subjected

to discrimination under any education program or activity receiving

federal financial assistance." 20 U.S.C. § 1681(a). The plaintiffs set forth

claims for student-on-student sexual harassment and retaliation.

> ### *(1) The plaintiff has sufficiently pled a valid claim for student-on-student sexual harassment.*

The defendants maintain that the plaintiffs failed to set forth a

valid Title IX claim for student-on-student sexual harassment.

It is settled that a funding recipient's deliberate indifference to

sexual harassment of a student by another student can constitute sex

discrimination under Title IX. *Davis v. Monroe Cty. Bd. of Educ.*, 526

U.S. 629, 643 (1999). For a school district to be held liable for a claim of

student-on-student sexual harassment under Title IX, a plaintiff must

establish that: (1) the defendant receives federal funds; (2) sexual

harassment occurred; (3) the harassment occurred under 'circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red], (4) the funding recipient had 'actual knowledge' of the harassment; (5) the funding recipient was 'deliberately indifferent' to the harassment; and (6) the harassment was 'so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school.' *Davis*, 526 U.S. at 645, 650.

Here, the District only contends that the complaint fails to allege facts to constitute deliberate indifference. The District asserts that the plaintiffs failed to set forth sufficient facts to establish that the District's response to the alleged harassment is clearly unreasonable considering the known circumstances.

A finding of deliberate indifference depends on the adequacy of a school district's response to the harassment.  *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012); *accord Doe v. Bellefonte Area Sch. Dist.*, 106 Fed. App'x 798, 799 (3d Cir. 2004) ('The relevant inquiry for purposes of evaluating whether [a school district] was deliberately

indifferent to known circumstances of harassment is to review its response to reported incidents of harassment.'). To constitute deliberate indifference, the recipient's response to the harassment must be 'clearly unreasonable in light of the known circumstances.' *Davis*, 526 U.S. at 648.

A review of the complaint reveals that it adequately sets forth a factual basis to support the deliberate indifference requirement. The District's response, or lack thereof, to the harassment reflects the following: (1) the plaintiffs were not contacted by the District's Title IX coordinator (Doc. 1 ¶¶100, 109(a), 117(a)); (2) the plaintiffs were not informed of their respective minor child's rights under Title IX regarding: supportive measures (*Id.* ¶¶ 109(b), 117(b); segregation from their assaulters; the right to file a Title IX complaint against their assaulters; protection from retaliation, including retaliatory harassment; an equitable and transparent investigation and disciplinary process; all corrective action necessary to stop further assault and harassment; and the right to have advisors represent their interests during the investigation and disciplinary process (*Id.* ¶ 101); (3) the defendants had actual knowledge of the assaults of A.M. and T.K. (*Id.* ¶¶ 107, 115); (4)

the defendants never acknowledged that the assaults were sexual in nature or investigated the assaults as attempted sexual assault (*Id.* 109(c), 117(c)); (5) no one from the District ever made a Childline report under the Pennsylvania Child Protective Services Law, 23 Pa. Cons. Stat. Ann. § 6319 (*Id.* 109(d), 117(d)); (6) the defendants characterized the assaults as "horseplay" and "hazing" (*Id.* ¶¶ 109(e), 117(e)); (7) the defendants created a hostile educational environment that tolerated male-on-male sexual assault and harassment (*Id.* ¶¶ 109(f), 117(f)); (8) the defendants refused to institute the necessary corrective action to remedy the hostile educational environment and to ensure A.M.'s continued enrollment and T.K.'s equal access to his education (*Id.* ¶¶ 109(g), 117(g)); and (9) the defendants failed to provide adequate training for the District's employees and other school officials on sexual harassment and assault, retaliation, and mandatory reporting (*Id.* ¶¶ 109(h), 117(h). The plaintiff has set forth a plausible showing of entitlement to relief for sexual harassment under Title IX. Thus, the defendants' motion to dismiss this claim will be denied.

### *(2) The plaintiff has set forth a viable claim for retaliation under Title IX.*

The defendants urge us to dismiss S.M.'s (for A.M.) retaliation count because the complaint is devoid of facts sufficient to demonstrate retaliation. Specifically, the defendants contend that there is no actionable conduct attributed to any defendant from which liability against the District could arise under Title IX, and there are no allegations sufficient to establish the causation prong of the claim. We disagree.

Although the statute does not specifically mention retaliation, it is settled that retaliatory conduct is within the broad prohibition of 'discrimination' made unlawful by Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, (2005). To establish a prima facie case of retaliation, a plaintiff must show (1) that he or she engaged in protected activity; (2) defendant had knowledge of the protected activity; (3) adverse school-related action was taken against plaintiff; and (4) a causal connection between the protected activity and the adverse action. *Yan v. Penn State Univ.*, 529 Fed. App'x 167, 171 (3d Cir. 2013) (citing *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)).

Here, the plaintiffs alleged that the individual defendants had sufficient involvement as we outlined above. For example, Kinder told S.M. and A.M. that they had no right to be present at the first disciplinary hearing and they were prohibited from knowing the outcome of the hearing. (Doc. 1 ¶¶ 58-61.) Kinder also excluded them from attending and participating in the second disciplinary hearing and a special meeting of the school board. (*Id.* ¶¶ 62-64, 78-79.) Kinder accused A.M. of lying. (*Id.* ¶ 83.).

To establish the requisite causal connection, a plaintiff must allege facts to demonstrate either: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 615 (E.D. Pa. 2014) (citing *Cooper v. Menges,* 541 Fed. App'x 228, 232 (3d Cir.2013). Here, the defendants argue that there are no allegations to establish that A.M.'s conduct of reporting the alleged assault specifically caused the District to act in a manner that caused harm to A.M. (Doc. 24, at 24.) The complaint alleges that the defendants retaliated against A.M. by: (1) attempting to discredit him by calling him a liar (Doc. 1 ¶ 122(a); (2)

refusing to properly investigate the assault (*Id.* ¶122(b); (3) refusing to institute the necessary corrective action to remedy the hostile educational environment A.M. faced and to ensure his continued enrollment at school (*Id.* ¶122(c); and (4) making a condition of A.M.'s education that he suffer a hostile educational environment in which the first sexual assault was tolerated, thereby enabling the second attempted sexual assault (*Id.* ¶122(d).  All these acts of retaliation caused A.M. to suffer damage, including being barred from accessing his education.  (*Id.* ¶123.)  Thus, we find that the causation element has been adequately pled. These allegations are sufficient to defeat the defendants' motion to dismiss the retaliation claim.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be denied and the action will be permitted to proceed. The defendants will be directed to answer the complaint.

An appropriate order follows.


Dated: March 2, 2023                 ***s/Joseph F. Saporito, Jr.***
                                     JOSEPH F. SAPORITO, JR.
                                     United States Magistrate Judge